**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **KINECT SOLAR, LLC,** | § | |
| *Plaintiff* | § | |
| | § | **Case No. 1:20-CV-378-LY** |
| **v.** | § | |
| | § | |
| **PANASONIC CORPORATION OF** | § | |
| **NORTH AMERICA,** | § | |
| *Defendant* | § | |

<u>**REPORT AND RECOMMENDATION**</u>
<u>**OF THE UNITED STATES MAGISTRATE JUDGE**</u>

**TO:    THE HONORABLE LEE YEAKEL**
**        UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant Panasonic Corporation of North America's Motion to Dismiss Plaintiff's Original Complaint Pursuant to Rule 12(b)(6), filed May 7, 2020 (Dkt. 6); Plaintiff Kinect Solar, LLC's Motion to Dismiss Panasonic Corporation of North America's Counterclaim, filed October 5, 2020 (Dkt. 19); and the associated response and reply briefs. The District Court referred the motions to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

**I.    Background**

Defendant Panasonic Corporation of North America ("Panasonic") manufactures and sells solar panels. Dkt. 1 ¶¶ 7, 9; Dkt. 6 at 3. In 2016, Panasonic entered into a partnership with Tesla, Inc. to manufacture a line of solar panels known as "SolarCity" solar panels. Dkt. 6 at 3. Tesla began liquidating its SolarCity panels in 2019. *Id.* at 4. On December 20, 2019, Plaintiff Kinect Solar, LLC ("Kinect") purchased SolarCity panels from Tesla. Dkt. 1 ¶ 10. Kinect began selling

the SolarCity panels "through its normal channels" at a price that was "substantially discounted" compared to the solar panels that Panasonic manufactures and sells directly through its own distribution network. *Id.* ¶¶ 12-13. Kinect contends that the panels it and Panasonic offers are "substantially equivalent." *Id.* ¶ 9. Panasonic, however, characterizes the SolarCity panels as "grey market goods," made for Tesla in accordance with Tesla's specifications. Counterclaim, Dkt. 18 ¶ 26. Panasonic alleges that Kinect began contacting Panasonic's authorized installers "claiming that they were selling discounted SolarCity modules that were backed by and warranted by Panasonic." *Id.* ¶ 14. Panasonic asserts that it began receiving messages from its authorized installers "inquiring whether the SolarCity solar panels were subject to the same warranties as Panasonic solar panels and whether these panels were part of Panasonic's authorized installer program." *Id.* ¶ 15.

On December 27, 2019, a Panasonic employee, David Lopez, emailed Kinect, stating: "I just want to make sure that you guys understand that these panels do not have Panasonic Warranty and only Tesla is responsible for their warranty on those panels so the fact that we make them has not value to them [sic]. We'll soon communicate to all our authorized installers about this to make sure they are aware of it." Dkt. 1 ¶ 15. Kinect contends that Panasonic made "false statements throughout the industry that the Solar[City panels], sold by Kinect, were not covered by a Panasonic warranty, and that Kinect was misrepresenting this fact to customers." *Id.* ¶ 19. Kinect alleges that Panasonic issued an "OEM Warranty" on the SolarCity panels, and that the OEM Warranty applies in addition to a warranty that Tesla provided to Kinect. *Id.* ¶¶ 11-12, 17-18. Kinect claims that because Panasonic issued the OEM Warranty, and that warranty was in addition to the Tesla Warranty, Panasonic knowingly made false statements to industry participants "for the purpose of deterring customers from purchasing the Solar[City] Panels." *Id.* ¶ 20.

On January 7, 2020, Panasonic sent a letter to "certain of its business partners," stating that the SolarCity panels "were not covered under any warranty by Panasonic Life Solutions of America." *Id.* ¶ 21. Kinect contends that Panasonic also gave a copy of the letter to PV Tech, "an online news and trade company," which published an article titled "US solar installers of Tesla designated panels [are] on the market with no warranties." *Id.* ¶ 25. The article stated that "Panasonic has warned US solar installers about Tesla selling a 'large quantity' of its solar panels designated to . . . an unidentified third party wholesaler that would not be covered by Panasonic product warranties." *Id.* ¶ 27.

Kinect alleges that, as a result of Panasonic's actions, it "could not sell its Solar[City] Panels in spite of the fact that they were being offered at a price substantially lower than the price at which Panasonic was selling the Panasonic Panels, and in spite of the fact that the Solar[City] Panels were covered by a Panasonic warranty, the OEM Warranty." *Id.* ¶ 28. Kinect further contends that prospective purchasers have "decline[d] to purchase the Solar[City] Panels, citing the reason that they were informed that the panels were not covered by a Panasonic warranty." *Id.* ¶ 29. Kinect alleges that it lost goodwill with customers who were led to believe that it misrepresented the warranty on the SolarCity panels, and has lost at least $6.4 million in sales revenue as a result of Panasonic's wrongful conduct. *Id.* ¶ 37. On April 9, 2020, Kinect filed this lawsuit against Panasonic, asserting claims for business disparagement, defamation, tortious interference with prospective business relations, and unfair competition. Dkt. 1.

On September 14, 2020, Panasonic filed a counterclaim against Kinect, alleging false advertising under 15 U.S.C. § 1125 and tortious interference with business relations. Dkt. 18. Kinect moved to dismiss Panasonic's counterclaim on October 5, 2020. Dkt. 19.

Panasonic alleges that Kinect purchased the SolarCity panels from Tesla "with the intent to 'flip' the panels for a quick profit by representing to consumers that the SolarCity brand solar panels and the Panasonic brand solar panels were the same but for the label attached to the panel." *Id.* ¶ 1. Panasonic alleges, however, that "there are significant differences in warranties and benefits associated with the two brands of solar panels including the entity issuing and administering the consumer warranty." *Id.* For example, the Panasonic warranty only applies where the SolarCity panels are included in a photovoltaic systems sold by SolarCity/Tesla. *Id.* ¶ 8. In addition, the SolarCity panels provide purchasers a 10-year limited warranty for workmanship by Tesla, while Panasonic-brand panels are provided a 25-year workmanship warranty. *Id.* ¶¶ 9-10. Panasonic alleges that Kinect "knew that the limited warranty associated with the SolarCity panels was provided to end consumers by Tesla," but nonetheless marketed the SolarCity panels under the Panasonic brand name and failed to disclose the differences between the brands of panels, including the warranties. *Id.* ¶ 14. Panasonic "is now inundated with installer and consumer questions and complaints directly associated with the misinformation being spread by Kinect." *Id.* ¶ 21.

After first addressing an evidentiary dispute, the Court considers each of the motions to dismiss.

## II.   Evidentiary Dispute

In deciding a motion to dismiss, a court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced in the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Panasonic submitted five exhibits in support of its Motion to

Dismiss. Kinect contends that the exhibits are inappropriate extrinsic evidence the Court should not consider in making a recommendation concerning Panasonic's Motion to Dismiss.

Kinect attached to its Complaint two documents mentioned above: the email from Panasonic employee David Lopez (Exh. A), and the article by PV Tech, which included a copy of the January 7, 2020 letter from Panasonic (Exh. B). Panasonic submitted with its Motion to Dismiss a subsequent letter from Panasonic, dated January 14, 2020, stating that warranties for the SolarCity panels "will continue to be backed by the warranty that Panasonic provides to Tesla, and any warranty claims for these models must be made directly through Tesla." Exh. 1-D, Dkt. 6-5. Kinect admits that this exhibit "purports to be a copy of one of the letters referenced in Plaintiff's Complaint," but disputes that the letter is central to any of its claims. Dkt. 8 at 5 & n.2. The Court disagrees and has considered this exhibit, but finds it immaterial to the Court's recommendation as to Panasonic's motion to dismiss Kinect's claims.

Kinect did not attach to its Complaint a copy of the Panasonic warranty pertinent to the SolarCity panels. Among the exhibits Panasonic attached to its Motion are two warranties, including a "Photovoltaic Modules Limited Warranty to SOLARCITY/Tesla" (Exh. 1-A, Dkt. 6-2). Kinect disputes that this is the warranty referenced in its Complaint, and it does not appear to contain the language quoted in Kinect's Complaint. *See* Dkt. 8 at 4; Dkt. 1 ¶ 8. With its response, Kinect submitted a different "Photovoltaic Modules Limited Warranty" (Exh. A, Dkt. 8 at 25) that Kinect contends is the relevant warranty. None of the other evidence submitted by Panasonic is referenced in Kinect's Complaint, and Panasonic does not argue that its Motion to Dismiss should be converted to a motion for summary judgment. Therefore, the Court has not considered any of Panasonic's exhibits with respect to its motion except Exhibit 1-D, Dkt. 6-5.[1]

---

[1] Panasonic also filed all documents except Exhibit 1-A as exhibits to its Counterclaim. The parties raise no evidentiary dispute concerning Kinect's Motion to Dismiss Panasonic's Counterclaim.

### III.   Legal Standard for Motion to Dismiss

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). Because this case is based on diversity jurisdiction, Texas substantive law applies. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78-80 (1938); *Lockwood Corp. v. Black*, 669 F.2d 324, 327 (5th Cir. 1982).

### IV.   Panasonic's Motion to Dismiss Kinect's Claims

Panasonic seeks dismissal of all Kinect's claims under Federal Rule of Civil Procedure 12(b)(6). Panasonic argues that Kinect's unfair competition claim should be dismissed because Texas law does not recognize an independent action for unfair competition. Panasonic also contends that Kinect has failed to state claims for business disparagement, defamation, or tortious interference with prospective business relationships on which relief can be granted. The Court considers all four claims in turn.

## A. Unfair Competition

Panasonic correctly argues that, under Texas law, unfair competition is a general area of tort law, not an independent cause of action. *See Schoellkopf v. Pledger*, 778 S.W.2d 897, 904-05 (Tex. App.—Dallas 1989, writ denied) ("Without some finding of an independent substantive tort or other illegal conduct, we hold that liability cannot be premised on the tort of 'unfair competition.'"); *Greenville Automatic Gas Co. v. Automatic Propane Gas & Supply, LLC*, 465 S.W.3d 778, 788 (Tex. App.—Dallas 2015, no writ).

Kinect addressed this argument only in conclusory fashion, in a footnote. *See* Dkt. 8 at 21 n.4. Accordingly, Kinect has abandoned its claim for unfair competition, which should be dismissed for failure to state a claim. *See United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (holding that failure to adequately brief an argument results in a waiver); *Black v. North Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding that plaintiff's failure to defend her claim in response to defendant's motion to dismiss "constituted abandonment"); *Arkansas v. Wilmington Tr. Nat'l Ass'n*, No. 3:18-CV-1481-L, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) ("Failure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue at the district court level.").

## B. Business Disparagement

To plead a business disparagement claim, a plaintiff must allege "(1) publication of disparaging and false words, (2) with malice, (3) which cause special damages, and (4) lack of privilege." *In re Burzynski*, 989 F.2d 733, 740 (5th Cir. 1993) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)). Panasonic alleges that Kinect failed to properly plead each element.

### 1.   "Publication of Disparaging and False Words"

With respect to the first element, Panasonic argues that Kinect fails to state a claim for business disparagement because the statements in Panasonic's January 7, 2020 letter to its customers are true. *See* Dkt. 6 at 17. Specifically, Panasonic contends that it was true that the SolarCity panels were not covered by warranties issued by Panasonic Life Solutions Company of America. *See id.*; *see also* Reply, Dkt. 9 at 8. Kinect responds that:

> Defendant conveniently omitted the fact, from this publication, that, while not covered by Panasonic Life Solutions Company of America, the Solar Panels were, in fact, backed by a warranty from another entity or division of Panasonic. This essential fact was necessary to avoid creating the false impression the letter conveys.

Dkt. 8 at 18. Kinect alleges that Panasonic's statements "created the false impression that Kinect was selling the Solar Panels without a warranty from Panasonic and that Kinect was misrepresenting this fact to customers and prospective customers." Dkt. 1 ¶ 46.

As stated above, in deciding a motion to dismiss for failure to state a claim, the Court does not weigh the evidence but must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *see also Arnold v. Williams*, --- F.3d ----, 2020 WL 6298043, at *4 (5th Cir. Oct. 23, 2020) ("At the 12(b)(6) stage of litigation, it is inappropriate for a district court to weigh the strength of the allegations."). Kinect has plausibly alleged that Panasonic's statements were false by implication and disparaging, as discussed further below with respect to Kinect's defamation claim.

### 2.   With Malice and Without Privilege

Next, Panasonic argues that Kinect provides no facts to support its assertion that Panasonic acted with malice and without privilege. Dkt. 6 at 11. A defendant is liable for business disparagement "only if he knew of the falsity or acted with reckless disregard concerning it, or if he acted with ill will or intended to interfere in the economic interest of the plaintiff in an

unprivileged fashion." *Kinetic Concepts, Inc. v. Bluesky Med. Corp.*, No. SA-03-CA-0832-RF, 2005 WL 3068209, at *2 (W.D. Tex. Nov. 1, 2005) (quoting *Hurlbut*, 749 S.W.2d at 766). Kinect alleges that Panasonic made materially false and disparaging statements regarding Kinect and the SolarCity panels "knowingly, or recklessly and without regard to the truth." Dkt. 1 ¶¶ 43-44. Kinect further alleges that Panasonic had actual knowledge that the SolarCity panels were covered by a Panasonic warranty, but nonetheless made statements creating a false impression that Kinect was selling them without a warranty from Panasonic. *Id.* ¶¶ 18, 46. Kinect thus has pled sufficient facts to support the malice element.

As for privilege, Kinect persuasively argues that only absolute privilege is relevant in the context of a business disparagement claim, and absolute privilege applies to only a "limited and select number of situations which involve the administration of the functions of the branches of government, such as statements made during legislative and judicial proceedings." Dkt. 8 at 10 (quoting *Hurlbut*, 749 S.W.2d at 768). Such is not the case here. Kinect pled sufficient facts to support its assertion that Panasonic acted without privilege.

### 3. Special Damages

With regard to the third element of business disparagement, Panasonic submits that: "[T]o prove special damages, a plaintiff must provide evidence 'that the disparaging communication played a substantial part in inducing third parties not to deal with the plaintiff, resulting in a direct pecuniary loss that has been realized or liquidated, such as specific lost sales, loss of trade, or loss of other dealings.'" Dkt. 6 at 12 (quoting *Encompass Office Sols., Inc. v Ingenix, Inc.*, 775 F. Supp. 2d 938, 959 (E.D. Tex. 2011)). Panasonic contends that Kinect failed to adequately plead special damages because the Complaint "does not identify specific lost sales or identify contracts that were allegedly terminated as a result of [Panasonic]'s claimed statements." *Id.*

"The special damages for a business disparagement claim are synonymous with economic damages as distinguished from general damages." *MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 201 (Tex. App.—El Paso 2017, no pet.). To prove special damages, a plaintiff "must provide evidence of direct, pecuniary loss attributable to the false communications of the defendant." *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 391 (5th Cir. 1996). The plaintiff must "establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales." *Hurlbut*, 749 S.W.2d at 767. The disparaging communication must have played a substantial part in inducing others not to deal with the plaintiff. *Id.*

Kinect has stated facts sufficient to demonstrate that it suffered special damages. Kinect alleged that its sales representatives "have had prospective purchasers decline to purchase the [SolarCity panels], citing the reason that they were informed that the panels were not covered by a Panasonic warranty." Dkt. 1 ¶ 29. Kinect thus pled economic loss in the form of lost sales, and that Panasonic's letter played a substantial part in inducing others not to purchase the panels.

#### 4.   Conclusion as to Business Disparagement

In sum, Kinect has pled sufficient facts to plausibly allege a business disparagement claim. Accordingly, Panasonic's Motion to Dismiss should be denied as to this claim.

### C.   Defamation

To plead a defamation claim, a plaintiff must allege that "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages, unless the statement constitutes defamation per se." *Warren v. Fed. Nat'l Mortg. Ass'n*, 932 F.3d 378, 383 (5th Cir. 2019) (quoting *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017)). Defamation per se refers to statements that are so obviously harmful that general damages may be presumed.

*Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 743 (5th Cir. 2019). As with Kinect's business disparagement claim, Panasonic argues that its letter is not capable of a defamatory meaning because it contained "true facts pertaining to the warranties issued for Panasonic brand solar panels versus SolarCity brand solar panels,"  and that its statements were not "of and concerning" Kinect. Dkt. 6 at 16-17. The Court considers each of Panasonic's arguments.

### 1. Defamatory Meaning

In a defamation case, the threshold question is whether the words used are reasonably capable of a defamatory meaning. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018), *cert. denied*, 139 S. Ct. 1216 (2019). Texas case law recognizes a distinction between "a statement that is defamatory by its text alone and a statement that is defamatory only by reason of extrinsic evidence and 'explanatory circumstances." *Id.* at 625 (internal quotation marks omitted). "The Court construes the statements as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement." *Musser v. Smith Protective Servs., Inc.*, 723 SW2d 653, 655 (Tex. 1987).

Under Texas law, a statement is defamatory "if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." *Walker*, 938 F.3d at 743 (citation omitted). The Court must determine whether the alleged defamatory statements are "reasonably capable of a defamatory meaning from the perspective of an ordinary reader in light of the surrounding circumstances." *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013). A plaintiff can bring a claim for defamation "when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115

(Tex. 2000). When a publication's text implicitly communicates a defamatory statement, the plaintiff's theory is "defamation by implication." *Dallas Morning News*, 554 S.W.3d at 627.

Kinect alleges that Panasonic published false statements to prospective customers through its January 7, 2020 letter, which read in part:

> It has come to our attention that Tesla has recently sold a large quantity of solar panels, once earmarked for SolarCity, into the marketplace through a third-party vendor. This letter is to clearly and categorically inform you and make you aware of the following: Effective immediately, Tesla/SolarCity solar modules are explicitly not covered under any warranty whatsoever by Panasonic Life Solutions Company of America. . . . If you purchase a Tesla/SolarCity solar module with the model prefix "SC," you and the end user purchaser, whether a homeowner or business, will not be protected by warranty coverage through Panasonic Life Solutions Company of America.

Dkt. 1 ¶ 22; Dkt. 8 at 18.

Kinect argues that Panasonic's statements were capable of a defamatory meaning because the communication implied that "(1) the Solar Panels sold by Kinect were not backed by a Panasonic warranty, and (2) that Kinect was misrepresenting this fact to potential purchasers." Dkt. 8 at 15; *see also* Dkt. 1 ¶ 23. Kinect alleges that the statements are false because the SolarCity panels come with a Panasonic warranty. Panasonic contends that the letter conveys true facts pertaining to the warranties at issue: "The letter does not say there are no warranties at all in place for the subject SolarCity panels but makes clear that any warranty is not issued by [Panasonic Life Solutions Company of America]." Dkt. 9 at 8. Panasonic acknowledges that Panasonic owes a 10-year workmanship warranty to Tesla for the SolarCity panels. Dkt. 6 at 4.

Truth is an affirmative defense to a defamation claim when the plaintiff is a private person or entity. *See Warren*, 932 F.3d at 383. In order for dismissal to be appropriate on the basis of an

affirmative defense, the defense must be established on the face of the complaint. *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA,* 467 F.3d 466, 470 (5th Cir. 2006).

Kinect has pled facts plausibly supporting defamation by implication because Panasonic omitted essential facts necessary to avoid creating a false impression, that is, that the SolarCity panels carried a warranty from Panasonic through Tesla. *See Turner*, 38 S.W.3d at 115. Even were the Court to conclude that the alleged defamatory statements are literally true, the Court cannot conclude at this stage of the proceeding that Kinect has stated an implausible claim on which it cannot possibly recover. *Encompass Office Sols.*, 775 F. Supp. 2d at 959. Kinect has pled sufficient facts to allege that Panasonic's statements were capable of a defamatory meaning.

## 2. Of and Concerning Plaintiff

To be actionable, a defamatory statement must be directed to the plaintiff. *Vice v. Kasprzak*, 318 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The plaintiff need not be specifically named in the publication for it to be defamatory; rather, "[a] publication is of and concerning the plaintiff if persons who knew and were acquainted with him understood from viewing the publication that the defamatory matter referred to him." *Id.* (internal quotation marks omitted).

Kinect alleges that it was "widely known in the wholesale industry that Kinect was in possession of, and was selling" the SolarCity panels, so a reasonable recipient of the Panasonic Letter would have understood Kinect was the "third party vendor." Dkt. 8 at 13, 15. Kinect further alleges that potential customers refused to purchase the SolarCity panels and told Kinect it was because of the information Panasonic disseminated, indicating that they understood that Panasonic's statements referred to Kinect. Accordingly, Kinect has pled sufficient facts to allege that Panasonic's statements were of and concerning Kinect.

### 3. Conclusion as to Defamation

Panasonic does not challenge the remaining defamation elements. Accordingly, the undersigned finds that Kinect has pled sufficient facts to plausibly allege a defamation claim.

### D. Tortious Interference with Prospective Business Relations

To plead a tortious interference with prospective business relations claim, a plaintiff must allege:

1. a reasonable probability that the plaintiff would have entered into a business relationship;
2. an independently tortious or unlawful act by the defendant that prevented the relationship from occurring;
3. the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and
4. the plaintiff suffered actual harm or damages as a result of the defendant's interference.

*United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 819 F. App'x 204, 211 (5th Cir. 2020) (quoting *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.— Houston [14th Dist.] 2001, pet. denied)); *see also Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (stating that elements of claim are (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss).

Panasonic argues that Kinect failed to state a claim for defamation or business disparagement, and therefore, Kinect's tortious interference claim fails because Kinect is required to plead an independently tortious or unlawful act. Dkt. 6 at 22. Panasonic also contends that Kinect "failed to identify, or even generally describe, the clients or opportunities it allegedly lost as a result of the alleged tortious interference . . . [and] failed to plead any facts in support of its claim that PNA acted with a conscious desire to prevent Kinect from selling the subject solar panels." Dkt. 6 at 19-

14

20. Kinect responds that it pled facts sufficient to show a reasonable probability that it would have entered into business relationships by alleging that prospective purchasers told its sales representatives they declined to buy SolarCity panels because they were informed that the panels were not covered by a Panasonic warranty. Dkt. 8 at 20-21; Dkt. 1 ¶ 29.

Kinect has not identified any specific prospective or existing client with which it would have done business but for Panasonic's conduct. *See, e.g.*, *Green Beret Found. v. Paquette*, No. SA-18-CV-1044-XR, 2019 WL 6048021, at *8 (W.D. Tex. Aug. 20, 2019) (dismissing tortious interference counterclaim); *Priority Design & Serv., Inc. v. Plaza*, No. SA-19-CV-00058-OLG, 2019 WL 2124677, at *4-5 (W.D. Tex. May 15, 2019) (recommending same); *Zhejiang Med. Co. v. Kaneka Corp.*, No. H-11-1052, 2012 WL 12893418, at *4 (S.D. Tex. Aug. 13, 2012) (same); *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 676 (S.D. Tex. 2010) (same); *Ceramic Performance Worldwide, LLC v. Motor Works, LLC*, No. 3-09-CV-0344-BD, 2010 WL 234804, at *3 (N.D. Tex. Jan. 21, 2010) (dismissing tortious interference claim, stating: "Likewise, plaintiff does not identify any prospective contracts or business relationships with third-parties that have been jeopardized by the dissemination of false information by defendants."). Therefore, the undersigned recommends that Panasonic's Motion to Dismiss should be granted as to Kinect's tortious interference claim.

## V.   Kinect's Motion to Dismiss Panasonic's Counterclaim

Kinect seeks dismissal under FED. R. CIV. P. 12(b)(6) of Panasonic's counterclaims for false advertising and tortious interference with business relations. Kinect also contends that Panasonic is not entitled to damages.

## A.  False Advertising

The parties direct the bulk of their arguments to Panasonic's false advertising counterclaim.

Section 43(a) of the Lanham Act 15 U.S.C. § 1125(a), provides in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To make out a prima facie case of false advertising under Section 43(a), a plaintiff must establish the following five elements:

> (1) A false or misleading statement of fact about a product;
>
> (2) Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers;
>
> (3) The deception was material, in that it is likely to influence the consumer's purchasing decision;
>
> (4) The product is in interstate commerce; and
>
> (5) The plaintiff has been or is likely to be injured as a result of the statement.

*IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002) (citing *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000)); *see also Boltex Mfg. Co. v. Galperti, Inc.*, --- F. App'x ----, 2020 WL 5506404, at *2 (5th Cir. Sept. 11, 2020). Kinect does not dispute that the SolarCity panels are in interstate commerce (factor 4), but contends that Panasonic has failed to meet the remaining elements of a false advertising claim under Section 43(a).

As discussed above in connection with Kinect's claims, the center of the parties' dispute is whether they made statements that were true, false, or misleading. Once again, at this stage of the proceeding, the Court does not find facts but assumes pleaded facts to be true and assesses facial plausibility. *Twombly*, 550 U.S. at 555.

With respect to the first false advertising element, Panasonic alleges the following in support of its allegation that "Kinect continues to make false or misleading statements of fact about the SolarCity panels," Dkt. 18 ¶ 26:

> For example, Kinect's marketing communications include a doctored spec sheet for the SolarCity panels which completely removes the Tesla name and refers to the SC-Series as "Panasonic SC Modules." (Exhibit A). In fact, the only company identified on the spec sheet is Panasonic with the words "manufactured by Panasonic" at the top of the sheet. *Id.* Although technically true that the solar panels were manufactured by Panasonic, the panels were manufactured by Panasonic for Tesla in accordance with Tesla's specifications. The original specification sheet for the product – which was created by Panasonic but which has been cleverly edited to accompany these grey market goods – clearly identified Tesla as the seller issuing the end consumer warranties. (Exhibit G). The revised specification sheet provided by Kinect whitewashes all references to Tesla, leading a reasonable consumer to believe Panasonic would be their contact for the warranties covering the SolarCity panels. *See* Exhibit A.

*Id.* A comparison of the purportedly "doctored" spec sheet allegedly used in Kinect's marketing (Exh. A) with the original spec sheet (Exh. G) shows that the words "Manufactured by Panasonic" have been added near the top of the "doctored" spec sheet, while the following wording has been deleted:

- Modules are manufactured by Panasonic to the specification of SolarCity. Modules are only warranted by Panasonic if the modules are included in a PV system sold by SolarCity or Tesla. SolarCity and Tesla make no warranties related to the modules, which are sold as-is. SolarCity will handle any warranty claims on behalf of any purchaser.

In addition, a reference to the module technology on the "doctored" spec sheet replaces the words "Manufactured by Panasonic for SolarCity" with "Panasonic SC Series Modules." The undersigned finds that this allegation provides the grounds of Panasonic's claim for relief in sufficient detail, so Panasonic has satisfied the first false advertising element.

Panasonic also has alleged the remaining challenged elements of a false advertising claim. Panasonic pled that it is being contacted regarding rebates, specifications, and warranties for the SolarCity panels, demonstrating that Kinect's allegedly false statements either deceived or had the capacity to deceive a substantial segment of potential consumers (factor 2). Dkt. 18 ¶ 29. Panasonic pled that the deception was material (factor 3) by alleging that the consumer's purchasing decision would be influenced by believing that he or she was purchasing an equivalent product at a reduced price. *Id.* ¶ 28. Finally, Panasonic satisfied factor 5 by pleading that it has been injured as a result of Kinect's allegedly false statements. Panasonic asserts that it

> is now inundated with installer and consumer questions and complaints directly associated with the misinformation being spread by Kinect. The injuries and damages sustained by PNA include, but are not limited to, damage to brand name and goodwill, lost sales, out of pocket costs associated with replacement of SolarCity panels with Panasonic panels for customers who thought they were purchasing Panasonic branded products but instead had SolarCity panels installed . . . .

*Id.* ¶ 31.[2]

Because Panasonic has sufficiently pled false advertising, Kinect's Motion to Dismiss should be denied as to Panasonic's claim under the Lanham Act.

---

[2] Kinect also challenges Panasonic's claim for damages and attorneys' fees under 15 U.S.C. § 1117, but the Court agrees with Panasonic that this challenge is premature at the motion to dismiss stage. *See* Dkt. 19 at 16-17; Dkt. 22 at 12 n.12.

### B.  Tortious Interference with Business Relationships

Kinect next argues that Panasonic's tortious interference claim is vague and insufficient, contending that "Panasonic does not identify a single provision of any contract with any authorized installer that Kinect allegedly induced an installer to breach." Dkt. 19 at 18. As detailed above, to plead tortious interference with prospective business relations, Panasonic as counter-plaintiff must allege:

1. a reasonable probability that Panasonic would have entered into a business relationship;
2. an independently tortious or unlawful act by counter-defendant Kinect that prevented the relationship from occurring;
3. Kinect did such act with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; and
4. Panasonic suffered actual harm or damages as a result of Kinect's interference.

*United Biologics*, 819 F. App'x at 211.

The first tortious interference element is satisfied by Panasonic's allegation that it "entered into contracts with various authorized installers, such as American Array Solar, that govern the sale, installation, workmanship, and warranties associated with Panasonic branded solar panels." Dkt. 18 ¶ 34. The second and third elements are met by Panasonic's pleading that Kinect intentionally and willfully engaged in false advertising by misrepresenting facts about the SolarCity panels, including product affiliation and warranties, to Panasonic's authorized installers. *Id.* ¶¶ 35, 37. Panasonic's counterclaim satisfies the final element by alleging actual harm or damages:

37. When the end-consumers and installers discovered that Kinect misrepresented the product affiliation, warranties, and benefits associated with the SolarCity panels, the end-consumers looked to Panasonic to remedy the mistake. In order to protect the goodwill of the Panasonic brand and maintain the loyalty of its customers, PNA assisted with the replacement of the SolarCity panels with Panasonic branded panels for these end-consumers.

38. As a result, not only did Kinect's tortious and false advertising proximately caused [sic] direct damages, such as loss of sales by PNA, it also proximately caused incidental and consequential damages to PNA associated with remedying the damage caused to end-consumers who were duped into accepting SolarCity panels in place of the Panasonic panels they intended to purchase. As a result, PNA is entitled to recover actual damages including, but not limited to, loss of revenues, out of pocket costs, costs of repair, court costs, exemplary damages, and all other damages permitted by law.

*Id.* ¶¶ 37-38. The undersigned finds that Panasonic has pled each element of a tortious interference claim and therefore recommends that Kinect's Motion to Dismiss be denied as to this claim.

### C. Damages and Attorneys' Fees

Finally, Kinect challenges Panasonic's claim for exemplary damages under Texas law. Dkt. 18 ¶¶ 40-42, 44. Kinect contends that Panasonic has not sufficiently pled that its alleged harm resulted from fraud, malice, or gross negligence, in contrast with ordinary negligence, bad faith, or deceptive trade practice. Dkt. 19 at 19 (citing TEX. CIV. PRAC. & REM. CODE § 41.003(a), (b)); *see also* Dkt. 24 at 10. Panasonic responds that Chapter 41 of the Texas Civil Practice and Remedies Code permits the award of exemplary damages when the claimant proves the defendant acted with malice. Dkt. 22 at 13. Panasonic argues that its allegation that Kinect intentionally and willfully interfered with Panasonic's business relationships with its authorized installers provides sufficient notice of the damages Panasonic seeks.

The Court agrees with Panasonic on this point. *See Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 618 (Tex. App.—Waco 2000, pet. denied) ("Malice may be inferred from a wrongful act done intentionally in violation of [a party's] rights.") (quotation omitted). Because its pleading is sufficient, the undersigned recommends that Kinect's Motion to Dismiss be denied as to Panasonic's damages claims.

## VI.   Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant Panasonic Corporation of North America's Motion to Dismiss Plaintiff's Original Complaint Pursuant to Rule 12(b)(6) (Dkt. 6) should be **GRANTED IN PART and DENIED IN PART**. Defendant's motion should be **GRANTED** with respect to Kinect's claims for unfair competition and tortious interference with prospective business relations, which should be dismissed without prejudice for failure to state a claim, and **DENIED** as to Kinect's claims for business disparagement and defamation.

The undersigned **FURTHER RECOMMENDS** that Plaintiff Kinect Solar, LLC's Motion to Dismiss Panasonic Corporation of North America's Counterclaim (Dkt. 19) should be **DENIED**.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

## VII.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C.

§ 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 30, 2020.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE